Nash, J.
 

 The first sum, it is admitted by the plaintiffs, has been fully accounted for. The plaintiffs do not aver that the second sum ever
 
 was
 
 received by the defendant; the allegation is, he either' received it or ought so to have done. The defendant positively denies he ever did receive it. To support their allegation, the plaintiffs introduced the testimony of Isaac Ribelin, the administrator of Michael Brown. He swears that he did pay over to the defendant the two several sums set forth in the petition. The testimony of this witness is so confused, and comes in so questionable a character, that we cannot place such confidence in it, as to make it the foundation of any decree. He asserts, in one part of his deposition, that the receipt bears date when given, yet its date is in 1818, the year of the death of Betsy Brown ; again he states, that he kept all the papers relative to the estate of Betsy Brown together in the same place, yet he produces the first receipt and can give no account of the
 
 second;
 
 so he says again, that Jacob Fisher made his settlement, and he delivered to him all the papers concerning the estate, and has never seen them since, and yet when called on produces the first receipt. He is withal interested in fixing the payment on the defendant, as he thereby avoids, as he may suppose, responsibility to the distributees of Michael Brown. But if there were no circumstances, shaking the confidence we might repose in the testimony of Ribelin, still we could not decree an account against the defendant upon it; for it is not so supported by the other testimony, as to out-weigh the positive denial of the defendant. The witness Kluts, states, that when he, as the agent of the plaintiff Waggoner, demanded this money, the defendant denied he owed him any thing, and upon being told that Ribelin would prove the payment, he observed, if Waggoner had begun at the root of the tree instead of the top, he would have got his money long since, referring very manifestly to Ribelin’s liability to
 
 *483
 
 pay the money. The testimony oí Daniel Waggoner proves nothing.
 

 We are of opinion, therefore, that the plaintiffs have failed to prove that the defendant ever received the second sum of
 
 $27,
 
 and that he has fully accounted with and paid over to the plaintiffs all the money he has received on account of his ward, Betsey Waggoner.
 

 As to the second ground, upon which the plaintiffs seek to charge the defendant, we do not think the defendant liable to the demand. In the petition it is stated, that Betsey Brown, the mother of the plaintiff, Betsey Waggoner, died in the year 1818, two years before the father, Michael Brown, and it is admitted that Betsey Waggoner was her illegitimate child. Betsey Brown, at the time of her death, was not entitled to any portion of her father’s estate, and of course her illegitimate child was not. By the common law, a bastard, being
 
 films nullius, was
 
 entitled tono portion of its parents’ prperty, either real or personal. By the 4th section of the 64th ch. Rev. Stat., it is provided, that, when a woman shall die intestate, leaving children, commonly called illegitimate or natural, and no children born in lawful wedlock, the personal estate of which she shall
 
 die iiossessed,
 
 shall be divided among such illegitimate children. We are clear that Betsey Waggoner was entitled to no portion of Michael Brown’s property, and that the defendant has been guilty of no negligence in not endeavoring to get that to which his ward had no claim.
 

 We are of opinion that his HoNor erred in decreeing an account; the interlocutory judgment is reversed, and the petition is dismissed with costs.
 

 Per Curiam. Petition dismissed,